UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY NEITLING,

                **Plaintiff,**                  CIVIL ACTION NO. 12-15576

   vs.

                                             DISTRICT JUDGE LAWRENCE P. ZATKOFF

COMMISSIONER OF              MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

                **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**  This Court recommends that Plaintiff's motion for remand (docket no. 12) be **GRANTED**, Defendant's motion for summary judgment (docket no. 15) be **DENIED**, and this matter be reversed and remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**II.**    **PROCEDURAL HISTORY:**

       Plaintiff filed an application for a period of disability and disability insurance benefits on November 19, 2010, alleging disability beginning June 13, 2008 due to impairments of his neck, shoulders, arms and hands.  (TR 55, 119-20).  The Social Security Administration denied benefits and Plaintiff filed a written request for a *de novo* hearing.  On August 25, 2011 Plaintiff appeared with counsel in Mt Pleasant, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Mark B. Greenberg.  (TR 24-54).  Vocational Expert (VE) David J. Holwerda also appeared and testified at the hearing.  In a September 2, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because he remained capable of performing jobs that exist in

significant numbers in the national economy.  The Appeals Council declined to review the ALJ's

decision and Plaintiff filed a complaint for judicial review.  Plaintiff filed a motion for remand and

Defendant filed a motion for summary judgment which are currently before the Court.

### III.   PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

#### A.   Plaintiff's Testimony

Plaintiff was fifty years old on the alleged disability onset date.  He completed the tenth

grade and worked in carpentry and boat building until he was laid off due to lack of work.  (TR 28,

41). Plaintiff testified that severe neck pain and an inability to use his left hand have prevented him

from working since he was laid off in 2008.  (TR 28).  He stated that his left arm is numb, it lacks

strength, and it cannot be raised above chest level.  (TR 29, 31).  He claimed that his right arm is

beginning to become numb as well and he drops objects frequently.  (TR 29-30).

Plaintiff reported that he has been in significant pain since he had neck surgery in 2011.  He

stated that his symptoms such as dropping items has become worse since the surgery.  He reported

that the pain starts at the base of his skull, runs down to the fifth vertebrae and radiates into his

shoulder and arm, making it difficult for him to look up or move his head from side to side.  (TR 33,

38).  He testified that the pain disrupts his sleep and prevents him from sitting or standing for long

periods of time.  (TR 30, 34).

Plaintiff testified that he takes Vicodin for pain and Gabapentin for numbness.  He reported

that the Vicodin makes him "loopy" and makes it difficult for him to maintain concentration and

focus.  (TR 31).  He stated that he has been in physical therapy since 2009.  Plaintiff testified that

he tries to clean his home and cook meals.

#### B.   Medical Evidence

The undersigned has thoroughly reviewed Plaintiff's medical record. In lieu of summarizing the record below, the undersigned will make references and citations to the medical record as necessary in response to the parties' arguments.

## IV.    VOCATIONAL EXPERT TESTIMONY

The VE testified that Plaintiff's past work as an aluminum boat assembler was medium semiskilled work but light as performed, past work as a construction carpenter was medium skilled work but heavy as performed, and his past work as a product assembler was medium semiskilled labor but heavy as performed. (TR 45). The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past work experience who was able to perform light work with the following limitations: (a) occasional pushing or pulling involving the non-dominant left upper extremity, (b) occasional ladders, ropes or scaffolds, (c) occasional crawling, and (d) frequent postural activities with no concentrated exposure to vibration or hazards. (TR 46). The VE testified that the hypothetical individual could not perform Plaintiff's past relevant work but could perform light work as a counter clerk (DOT 249.366-010), counter attendant (DOT 311.477-014), and mail clerk (DOT 209.687-026), comprising 9,000 jobs in Michigan and 320,000 jobs nationally. (TR 46-47).

Next, the ALJ presented a second hypothetical requiring light work with the following limitations: (a) occasional postural activities, (b) no climbing of ladders, ropes or scaffolds, (c) no concentrated exposure to extreme cold, vibration or humidity and no exposure to hazards, (d) no extremes of neck motion, (e) no reaching on the left, (f) limited to lifting and carrying no more than five pounds on the left, (g) no pushing or pulling with the left upper extremity, (g) occasional fine manipulation with the left upper extremity, and (h) no gross manipulation with the left upper

extremity.  (TR 47).  The VE testified that an individual with these limitations could perform light

unskilled jobs such as surveillance monitor (DOT 379.367-010), parking lot attendant/cashier (DOT

211.462-010), and as a bakery worker on a conveyor line (DOT 524.687-022), comprising

approximately 6,400 jobs in Michigan and 187,000 jobs nationally.  (TR 47-48).  The VE testified

that the same jobs would be available if the hypothetical individual also required simple repetitive

tasks, and right sided limitations such as frequent reaching in all directions and occasional gross

manipulation with the dominant right upper extremity.  (TR 48-49).

Next, the VE testified that if the individual was limited to lifting no more than ten pounds

on the dominant right upper extremity, had no functional use of the left arm, no above shoulder-level

lifting with the right upper extremity, and no repetitive lifting with the left arm in any capacity, the

individual could still perform work as a parking lot attendant, cashier, and surveillance monitor.

(TR 49-50).  When prompted by Plaintiff's counsel, the VE testified that the hypothetical individual

could not be off task more than thirty minutes over the course of an eight hour workday.  The VE

also testified that work would be precluded if the individual would be off task at unpredictable times

throughout the day due to a medication induced inability to concentrate or retain focus.  (TR 52-53).

## V.      ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act

through September 30, 2013.  He also found that although Plaintiff has not engaged in substantial

gainful activity since the alleged onset date of June 13, 2008, and suffers from the severe

impairments of degenerative disc disease of the cervical spine, status post cervical foraminotomies

and cervical laminectomy, and cervical poly-radiculopathy, he did not have an impairment or

combination of impairments that meets or equals a listed impairment.  (TR 12-15).  The ALJ found

that Plaintiff has the residual functional capacity (RFC) to perform light work with the following limitations: (a) only occasional postural activities, (b) no climbing of ladders, ropes or scaffolds, (c) no concentrated exposure to extreme cold, vibration or humidity, (d) must avoid all exposure to hazards, (e) must avoid extremes of neck motion and left-sided reaching, (f) unable to lift or carry more than five pounds with the left upper extremity or engage in pushing, pulling, or gross manipulation with the left upper extremity, (g) capable of performing occasional fine manipulation with the left upper extremity, (h) limited as of January 21, 2011 to frequent reaching on the right, occasional gross manipulation on the right, and prophylactically to simple, repetitive tasks.  (TR 15-18).  The ALJ found that Plaintiff is unable to perform his past relevant work but remains capable of performing jobs that exist in significant numbers in the national economy.  (TR 18-19). Consequently, the ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act from the onset of disability date of June 13, 2008 through September 2, 2011, the date of the ALJ's decision.  (TR 19-20).

## VI.    LAW AND ANALYSIS

### A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards.  *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.      Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1.  he was not engaged in substantial gainful employment; and
2.  he suffered from a severe impairment; and
3.  the impairment met or was medically equal to a "listed impairment;" or
4.  he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations

6

omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." 42 U.S.C.§ 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at \*8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff argues that the ALJ erred in assessing his credibility and failed to explain how the medical evidence supports the RFC determination. He contends that the ALJ failed to completely acknowledge Plaintiff's extensive medical documentation and instead mentioned only portions of the relevant records. He also questions the ALJ's treatment of Dr. LaClair's medical opinion.

### 1. Credibility Assessment

Plaintiff argues that the ALJ's decision to discredit his testimony is not supported by substantial evidence. Specifically, he claims that the ALJ was factually incorrect in his assertion that the evidence did not support Plaintiff's allegations regarding his right upper extremity. Plaintiff further contends that the ALJ failed to assess his credibility with respect to his left upper extremity

impairments or account for his impairments to the extent he alleged.  With respect to his neck pain,

he claims that the ALJ improperly failed to incorporate his allegations of medication side effects

stemming from his prescription pain medications, specifically that his medication significantly

impaired his ability to concentrate and maintain focus and that his pain interfered with his ability

to sleep which caused him to be tired the next day.

It is well known that "[s]ince the ALJ has the opportunity to observe the demeanor of a

witness, his conclusions with respect to credibility should not be discarded lightly and should be

accorded deference."  *Casey v. Sec'y of Health & Human Servs,* 987 F.2d 1230, 1234 (6th Cir. 1993)

(citation omitted).  A finding that a claimant is not credible must be supported by substantial

evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements.  In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true.  When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

Social Security Ruling ("SSR") 96-7p, 1996 WL 362209, at *34485-86.  The assessment must be

based on a consideration of all of the evidence in the case record, including

> Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

8

*Id.* at \*34486.

The Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. § 404.1529(c)(2).  In addition to the available objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain.  20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).  An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence."  *Walters v. Comm'r*, 127 F.3d at 531.

Here, the ALJ reviewed Plaintiff's testimony and other evidence of record and concluded that his statements regarding the intensity, persistence, and limiting effects of his impairments were generally credible but not fully credible to the extent he alleged total disability.  (TR 17).  Plaintiff argues that the ALJ erred in finding that the evidence did not support his allegations of right upper extremity weakness and numbness.  He claims that because the evidence supports his statements the ALJ should not have used that as a basis for discrediting his testimony.

The record shows that the ALJ considered Plaintiff's statements and the evidence pertaining to his right upper extremity impairment.  The ALJ discussed the fact that Plaintiff testified that he has difficulty grasping and handling objects with his upper extremities.  (TR 16-17).  The ALJ then

9

considered evidence showing that Plaintiff had full strength in his right upper extremity in August 2010 when he was discharged from physical therapy. (TR 16). He discussed evidence showing that Plaintiff reported that his upper extremity pain improved immediately following surgery. He observed that Plaintiff did not report any weakness or numbness in his right upper extremity in the examinations following his surgery. (TR 17). The ALJ also reviewed post-operative neurosurgery outpatient notes that state that Plaintiff had full right upper extremity strength. (TR 17, 454).

Plaintiff argues that numerous medical records show that he complained of issues pertaining to burning, numbness, and worsening pain in his right upper extremity. The ALJ imposed work-based limitations on the use of Plaintiff's right upper extremity. However, he stopped short of finding that Plaintiff's right upper extremity issues were disabling, and he questioned the credibility of Plaintiff's allegations regarding weakness and numbness in the right upper extremity. This is because Plaintiff testified that his upper extremity issues, i.e. the weakness, numbness and pain, led to difficulties with grasping and handling of objects. Contrary to Plaintiff's assertion, the ALJ found that the evidence repeatedly showed that Plaintiff had full strength in that extremity. The ALJ found that the evidence did not support Plaintiff's limiting allegations with respect to his right upper extremity and he supported his conclusion with citations to the medical record.

Plaintiff also assigns error to the ALJ's opinion because he failed to assess his credibility with respect to his left upper extremity impairments, account for his impairments to the extent he alleged, or adopt his statements with respect to medication side effects. The ALJ discussed evidence pertaining to Plaintiff's cervical spine issues, neck pain, and left upper extremity issues. He also noted that Plaintiff testified that he suffered side effects from his medication and claimed that his symptoms prevented him from performing many activities of daily living. In addition, the ALJ

10

considered evidence showing that Plaintiff had some success with treatment modalities or pain-relieving measures other than medication.  For instance, he observed that Plaintiff reported good pain relief with a TENS unit and the use of a moist heat pack.  He noted that while Plaintiff reportedly made minimal progress in physical therapy and failed to meet his left upper extremity goals or goals of pain reduction, he was able to improve his cervical spine range of motion.  The ALJ noted that Plaintiff's left extremity strength was reported as a 4/5 and his left grip strength was measured at thirty-five pounds.  He noted that at other times Plaintiff was reported to have full grip strength on the left.  He discussed evidence showing that Plaintiff complained of increased left deltoid weakness but less upper extremity pain following surgery.  As for his claim that he was tired and unable to concentrate and focus, other than his testimony Plaintiff points to only one reference in the medical record where he mentioned medication side effects, and he does not show that he had any conversation with any of his medical practitioners at any time about adjusting or modifying his medication to eliminate side effects.

The ALJ considered the evidence discussed above and concluded that Plaintiff was limited in his ability to work but that his allegations of disability were not fully credible.  He also concluded that Plaintiff's limitations were accounted for in the RFC.  Plaintiff argues that the ALJ's credibility assessment should have been more complete and should have assessed his credibility as to each of his claimed impairments.  However, Plaintiff cites no authority for the proposition that the ALJ must make a function-by-function credibility assessment. *See, e.g., Kornecky v. Comm'r*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) (an ALJ is not required to make explicit credibility findings as to each bit of conflicting testimony).  The undersigned finds that Plaintiff's credibility assessment was sufficiently clear and it was supported by substantial evidence.  The ALJ's credibility assessment

should not be disturbed.

*2.      The RFC Determination and Medical Opinion Evidence*

Next, Plaintiff argues that the ALJ failed to completely acknowledge Plaintiff's extensive

medical documentation and opted instead to mention only portions of the medical record while

failing to explain how the evidence led to his RFC.

The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to

perform work-related activities.  20 C.F.R. §§ 404.1545, 404.1546(c).  It is defined as the most, not

the least, the claimant can do despite his impairments.  20 C.F.R. § 404.1545(a).  The ALJ derives

the RFC after considering the medical and other relevant evidence in the record.  He must support

the RFC by including a narrative discussion describing how the evidence supports each conclusion

and provide citations to specific medical and nonmedical evidence to support his findings.  SSR 96-

8p, 1996 WL 374184, at *7.  In addition, in assessing the RFC the ALJ must discuss the claimant's

ability to perform sustained work activities in an ordinary setting on a regular and continuing basis.

*Id.*  The ALJ may adopt an opinion of a medical or nonmedical source in whole or in part if he finds

that it is supported by and not inconsistent with the other substantial evidence of record.  However,

at all times the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an

obligation to determine the RFC based on the evidence he finds credible.

Plaintiff's argument that the ALJ failed to acknowledge his extensive medical documentation

is unavailing.  It is well established that there is no requirement that the ALJ discuss every piece of

evidence in the administrative record.  *Kornecky v. Comm'r*, 167 Fed. Appx. at 508 (citation

omitted).  *See also Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citing

authority for the proposition that the fact that the ALJ's opinion failed to discuss all of the testimony

and evidence presented does not mean that the ALJ failed to consider the evidence).  The ALJ

considered evidence favorable to Plaintiff's claims of disability as well as evidence unfavorable to

his disability claims.  The fact that the ALJ did not acknowledge all of the evidence of record does

not require a remand.

However, Plaintiff's contention that the ALJ failed to explain how the evidence supports his

RFC determination is a compelling argument.  Social Security Ruling 96-8p explicitly provides that

the ALJ must include a narrative discussion describing how the evidence supports each conclusion.

The ALJ here provided a narrative discussion of portions of the evidence but did not relate that

evidence back to his RFC findings.

Courts in this district and circuit have held that the ALJ's failure to link the evidence to the

ultimate RFC requires a reversal and sentence four remand:  "An ALJ ... must articulate, at some

minimum level, his analysis of the evidence to allow the appellate court to trace the path of his

reasoning."  *Meyer v. Comm'r*, No. 10-12963, 2011 WL 3440152, at *9 (E.D. Mich. June 9, 2011)

(quoting *Lowery v. Comm'r*, 55 Fed. Appx. 333, 339 (6th Cir. 2003)).  The *Meyer* court further

found that it "may not uphold an ALJ's decision, even if there is enough evidence in the record to

support it, if the decision fails to provide an accurate and logical bridge between the evidence and

the result."  *Id*. (citations and internal quotation marks omitted).

In *Steadman v. Comm'r*, No. 10-801, 2011 WL 6415512 (S.D. Ohio Nov. 14, 2011), the

court noted that the ALJ failed to include a narrative explanation describing how the medical

evidence of record supported the claimant's specific exertional limitations set forth in the RFC

finding.  The *Steadman* court wrote:

> Although the ALJ did discuss plaintiff's statements of limitations as well as the
> medical evidence related to plaintiff's back impairment and treatment therefor . . .

13

the ALJ failed to take the next step and explain how such evidence signified an ability to perform light work. Simply listing the medical and other evidence contained in the record and setting forth an RFC conclusion without linking such evidence to the functional limitations ultimately imposed in the RFC is insufficient to meet the "narrative discussion" requirement of SSR 96-8.

*Id*. at *12.

Here, although the ALJ recited relevant evidence of record he did not provide a narrative discussion explaining how the evidence signified Plaintiff's ability to perform light work with the ability to frequently reach on the right, perform occasional gross manipulation on the right, lift or carry up to five pounds with the left upper extremity, and engage in occasional fine manipulation with the left upper extremity. It is not within the purview of the Court to sift through the record and cite to evidence that may support the ALJ's findings. The undersigned finds that the ALJ failed to describe how the evidence he cited supports the RFC determination. That failure requires remand.

On remand, the undersigned recommends that the ALJ address and provide further support for his decision to discount the July 2011 opinion of Dr. LaClair. (TR 458-62). In addition, the ALJ should discuss the weight he assigned to the April 2011 opinion of Dr. Valdivia. (TR 406). Dr. LaClair opined that Plaintiff should not lift more than ten pounds or perform above shoulder lifting with the right arm. He further found that Plaintiff cannot perform any repetitive lifting with the left arm or use the left arm functionally. (TR 462). The doctor opined that Plaintiff was totally and permanently disabled from the competitive work force. The ALJ accorded Dr. LaClair's opinion little weight on the grounds that the determination of disability is an issue reserved to the Commissioner. He also found that the doctor's opinions as to specific limitations were not supported by his examination or by the evidence of record.

Clearly the ALJ was not required to accept Dr. LaClair's opinion on the ultimate issue of

14

disability.  However, it is not clear how or why the ALJ concluded that the remainder of the doctor's opinion was not supported by the evidence of record.  The ALJ draws this conclusion without explanation and without citing to evidence that was inconsistent with Dr. LaClair's findings.  He also does not identify what weight he assigned to the opinion of Dr. Valdivia, which states that Plaintiff cannot bear weight on his left arm due to weakness.  (TR 406).

The ALJ opined that Plaintiff would not be disabled even if he fully credited Dr. LaClair's testimony because the VE identified work Plaintiff could perform without the use of his left upper extremity.  (TR 17).  This may be true.  However, Plaintiff contends that if the ALJ had assigned greater weight to the opinion of Dr. LaClair, he would have found that Plaintiff's upper extremity limitations supported a finding that he could at most perform sedentary work, which in turn would have triggered grid rule 201.10 and directed a determination of disabled.  Since the ALJ failed to adequately support his finding of light work, Plaintiff's argument may have merit.  Accordingly, the undersigned recommends that the ALJ identify on remand the weight he assigned to the April 2011 opinion of Dr. Valdivia and provide further discussion and citations to the record to support the weight he assigned to the July 2011 opinion of Dr. LaClair.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this

15

Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: November 12, 2013          s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: November 12, 2013          s/ Lisa C. Bartlett
                                  Case Manager